**ALTMAN v. JACKSON et al.  (No. 987.)**

(Court of Civil Appeals of Texas. Beaumont. July 2, 1923.)

1. **Fraud** ⬦═30—**Conspirator obtaining goods on credit of employer of coconspirator held liable to employer for damages for fraud.**

A retail merchant's clerk, conspiring with an insolvent woman, falsely represented that he desired to make some personal purchases, and thereby secured from his solvent employer an order on wholesale merchants, who were deceived by false representations that the woman was the clerk's wife, and thereby induced to furnish goods for her use, and to charge the same to employer's account. *Held*, that the clerk's coconspirator was liable to the employer for damages for fraud and deceit.

2. **Sales** ⬦═17—**Sequestration** ⬦═4—**Party defrauded by conspirators buying on his credit held an owner entitled to sequester and subject goods to judgment for damages.**

A retail merchant's clerk, conspiring with defendant, an insolvent woman, falsely represented that he desired to make some personal purchases, and thereby secured from his solvent employer an order on wholesale merchants, who were deceived by false representations that the woman was the clerk's wife, and thereby induced to furnish goods to her, and to charge the same to the account of the employer, who, according to the intention of the parties to the sale, was to pay for the goods. *Held*, in an action against defendant and her coconspirator by the employer for damages for fraud and deceit, that the title to the goods passed to plaintiff, and, though not held in trust for plaintiff by the defendants in the strict sense of the term, they were estopped to deny

his title to the goods, which, having been levied on by a writ of sequestration could be subjected to plaintiff's judgment for damages.

Appeal from Limestone County Court; H. F. Kirby, Judge.

Action by J. Altman against Ruth Jackson and another. Judgment for defendants, and plaintiff appeals. · Reversed and remanded.

A. B. Rennolds, of Mexia, for appellant.

Mays, Mays & Myers, of Fort Worth, for appellees.

HIGHTOWER, C. J.  The appellant, as plaintiff below, filed this suit in the county court of Limestone county against the appellees, Ruth Jackson and Sam Allen, to recover damages against Ruth Jackson in the sum of $638.87 because of fraud and deceit practiced upon appellant by her, and as against Jackson for the possession of certain articles of merchandise, or their value, described in appellant's petition. In his petition, for cause of action, the appellant alleged, among other things:

That he "owns and conducts a mercantile business in the town of Mexia, Limestone county, Tex. * * * That on or about the 12th day of October, 1921, defendant, for the purpose of cheating and defrauding this plaintiff, colluded together with one Redfern, who was at that time employed by plaintiff as a salesman in his dry goods business, and fraudulently agreed with the said Redfern that he would procure from plaintiff an order on Sanger Bros., wholesale dry goods merchants of Dallas, Tex., from whom defendant well knew plaintiff purchased large quantities of goods for his said retail business, by representing to plaintiff that the said Redfern wanted to purchase from said Sanger Bros. (who also sell at retail) a few articles for his own (the said Redfern's) use. That, after procuring such order, she, the said Ruth Jackson, would accompany him, the said Redfern, to the city of Dallas, as his wife, and would represent to the said Sanger Bros., in order to deceive them, that she was the wife of the said Redfern, and thereby induce the said Sanger Bros. to deliver to her a large quantity of goods for her use, and to charge the same to the account of this plaintiff. That, pursuant to defendant's aforesaid false and fraudulent scheme and agreement with the said Redfern, defendant induced the said Redfern to represent to plaintiff that he, the said Redfern, desired to go to the city of Dallas and to purchase a necktie and other articles for his own use, amounting in value to about $50, and, acting for defendant Ruth Jackson, Redfern did, by such false and fraudulent representations, procure from plaintiff an order on the said Sanger Bros. authorizing them to sell said Redfern such articles as he might want, and, having confidence in the said Redfern, and being ignorant of defendant's aforesaid scheme to defraud plaintiff, through the said Redfern, he executed such order and delivered the same to the said Redfern. That, pursuant to defendant's aforesaid fraudulent scheme to so cheat and de-

fraud plaintiff, she (defendant) did accompany the said Redfern to the city of Dallas, and both the defendant and the said Redfern presented said order to Sanger Bros., and represented to the said Sanger Bros. that defendant was the wife of the said Redfern, when in truth and in fact defendant was not the wife of said Redfern, but was and is only an adventuress, seeking to so defraud this plaintiff. That, by all of the aforesaid false and fraudulent acts, schemes, and representations, defendant, with the use of the aforesaid fraudulently procured order from plaintiff, which she procured in the name of the said Redfern, the said Ruth Jackson induced the said Sanger Bros. to deliver to her the following described goods at the following prices, which prices were and are their value, to wit:

| | |
|---|---|
| One pair ladies' slippers. | $ 12 86 |
| One ladies' squirrel coat | 579 50 |
| One ladies' hat | 46 51 |
| | $638 87 |

—and by all the aforesaid false and fraudulent acts, schemes and representations the defendant induced the said Sanger Bros. to charge said goods to the account of this plaintiff, at the above stated prices, and thereby plaintiff became liable to the said Sanger Bros. therefor. That the said goods were so sold by Sanger Bros. to this plaintiff and delivered to defendant Ruth Jackson, who held them in trust for plaintiff, and the title to said goods never passed to defendant, but the same is in this plaintiff, and the said goods justly and legally belong to plaintiff, and he is entitled to possession of the same. That plaintiff is solvent and will be compelled to pay the said Sanger Bros. the aforesaid price for said goods. That the said Redfern is notoriously insolvent—has absconded from this country; hence not a party to this suit. If mistaken in the allegation that the said goods belong to plaintiff, then plaintiff says that, by reason of the facts hereinbefore averred, by the aforesaid fraud perpetrated upon plaintiff by defendant Ruth Jackson she has damaged plaintiff in the sum of $638.87, in that the said Sanger Bros. have refused to permit plaintiff to return said goods, in case he recovers them, but holds plaintiff liable for the same, that plaintiff is liable to the said Sanger Bros. for the value of said goods, and will be compelled to pay the said Sanger Bros. for the same, plaintiff being perfectly solvent, that by reason of the premises plaintiff is entitled to have said goods subjected to the payment of his said damages, the defendant being an irresponsible and insolvent woman, and by reason of the premises plaintiff is entitled to the possession of said goods, in that by the aforesaid fraudulent means defendant deprived plaintiff of the possession of the same, and they are unlawfully withheld by defendant from the possession of plaintiff."

The petition then avers that defendant S. M. Allen is setting up some kind of a claim or right to hold said goods, and that the said defendant, as well as defendant Ruth Jackson, is withholding said goods from the possession of plaintiff. Then follow allegations necessary for the issuance of a writ of sequestration, and that, said goods having beeen seized by virtue of a writ of sequestration and replevied by de-

fendant, plaintiff prays that on a hearing hereof he have judgment for possession of said goods, or that plaintiff have judgment for his damages; that the court by its decree subject said goods to the judgment rendered by the court, and, in the event that said goods cannot be found, that plaintiff have judgment against defendants and the sureties on their replevy bond for the value of said goods, for costs of suit, etc.

The defendant Ruth Jackson answered by general demurrer, several special exceptions challenging the sufficiency of the petition on the ground that the allegations of fraud are too general, and that the facts upon which the claimed fraud is based should be more specifically stated, and said defendant further answered by general denial. Allen filed no answer.

When the case was called for trial the general demurrer was sustained, and, appellant declining to amend, the suit was dismissed by the court. The action of the court in sustaining the general demurrer is properly assigned as error.

[1] If the allegations of appellant's petition be true, and this is admitted by the general demurrer, appellant was unquestionably entitled to recover damages as against the appellee Ruth Jackson for the fraud and deceit practiced by her upon appellant. By her fraud and deceit, which the general demurrer admits, appellant became bound to pay to Sanger Bros. the full sum for which he now sues appellee, and in his petition in this case appellant recognizes and concedes his liability to Sanger Bros., and shows that he is solvent and will be bound to pay for the goods which were furnished to Ruth Jackson and her coconspirator by Sanger Bros., as directed by appellant's letter to Sanger Bros. We say there can be no question of Ruth Jackson's liability for damages for such fraud and deceit. The only question in the case about which there is any difficulty is as to whether the merchandise which has been levied on by writ of sequestration can be subjected to the payment of any judgment that Altman might recover against Ruth Jackson. In the case of Jones v. Blum (Tex. Civ. App.) 23 S. W. 844, it was held that, where goods are purchased by one on credit, with the intention on the part of the purchaser at the time that they are not to be paid for, the title does not pass to such purchaser, but remains in the vendor, who has )parted with the possession and made the delivery, believing that the goods are to be paid for. This holding, of course, is based upon the theory that the seller of the goods parted with their possession by reason of the deceit and fraud practiced upon him by the purchaser, and, there being no intention on the part of the purchaser to pay for the goods, the minds of the seller and the purchaser did not meet on the trans-

action, and the title to the goods remained with the seller.

[2] In the instant case, the goods were purchased by Ruth Jackson and her coconspirator with the expectation that they were to be paid for, of course, but not by herself and her coconspirator, or either of them, but by appellant, Altman. Therefore Jones v. Blum, supra, is not decisive of the point here under consideration, because the goods were sold and purchased with the expectation of all parties that they were to be paid for, and therefore the title to the goods did pass from Sanger Bros. to some one, either Ruth Jackson and her coconspirator, or one of them, or to appellant, Altman. Counsel for neither side in this case have cited any authority directly in point, and we have not been able to find any. Since, however, it is certain that the title to the goods passed from Sanger Bros. to some one, and since there was no intention on the part of Ruth Jackson or her coconspirator to pay for the goods, but it was their expectation and intention that Altman should pay for them, we think that it ought to be held, and that equity will compel the holding, that the title passed, not to Ruth Jackson and her coconspirator, or either of them, but to Altman, who, according to the intention and expectation of all parties, was to pay for the goods. It may be that it cannot be correctly held that the goods were held in trust for Altman by Ruth Jackson and her coconspirator in the strict meaning of that term, yet we think that it ought to be held, if the proper plea shall be made, that Ruth Jackson and her coconspirator are estopped to deny that the goods were purchased for and belong to appellant, Altman. If we are correct in this, it necessarily follows that the goods ought to be subjected to any judgment that Altman might recover against Ruth Jackson, as prayed by Altman, provided they have not passed into the hands of an innocent purchaser.

It follows from what we have said that the judgment must be reversed, and the cause remanded; and the court, upon another trial, will be governed according to the views hereinabove expressed.